USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/4/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISTIN BALLAS,

Plaintiff,

-v-

GREENHOUSE SOFTWARE, INC., ET AL.,

Defendants.

**MEMORANDUM AND ORDER**

22-CV-10332 (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

Plaintiff Kristin Ballas ("Plaintiff" or "Ballas") brought this action against defendants Greenhouse Software, Inc. ("Greenhouse"), Production Glue, LLC ("Production Glue"), New York Convention Center Operating Corporation d/b/a The Jacob K. Javits Convention Center ("Javits"), and FWR, LLC, Fresh Wata Rentals LLC, Fresh Wata LLC d/b/a Starbase, and Fresh Wata ID, LLC (together, "Fresh Wata") for personal injury allegedly resulting from the toppling of a seating structure at a professional conference. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court are Plaintiff's motion for summary judgment and Defendants' cross motions for summary judgment. For the reasons described below, the motions filed by Ballas and Fresh Wata are **DENIED**, and the motions filed by Production Glue, Greenhouse and Javits are **GRANTED**, except as to the claims for strict product liability and indemnification, for which they are **DENIED** as moot.

1

## I.    BACKGROUND

### A.    Factual Background

On May 25, 2022, Ballas attended a conference sponsored by Greenhouse at the Jacob K. Javits Convention Center (the "Javits Center").  ECF No. 199-23 ("Ballas Decl.") ¶ 2.[1]  There, Ballas and her colleague, Lauren Papa, sat on a piece of furniture referred to as the "Seat-n-Meet."  *Id.* ¶ 3–4.  The Seat-n-Meet was a single, connected structure that included a rectangular table surrounded by six swing seats, two on each long side and one on each short side.  The six swings were suspended from above by chains hanging from a rectangular metal frame.  *See id.* ¶ 5.  A diagram of the Seat-n-Meet appears below.



*Image taken from ECF No. 215-8 at 2.*

---

    [1] Page citations for filings made in this case refer to the page numbers automatically stamped at the top of each page by the Electronic Case Filing system.



*Image taken from ECF No. 215-2 at 12.*



*Image taken from ECF No. 199-1 at 3.*

Ballas and Papa had their picture taken on the Seat-n-Meet, for which they leaned back to mimic swinging. Ballas Decl. ¶ 10. Ballas says they did not actively "swing" on the Seat-n-Meet or take their feet off the ground. *Id.* ¶ 11. However, in order to sit down, they swung the seats back. *Id.* ¶ 8.

Shortly after the photo was taken, the Seat-n-Meet tipped over. *Id.* ¶ 13. Ballas claims that the Seat-n-Meet slammed down onto her legs and that she struck her head on the metal bars of the structure. *Id.* The Seat-n-Meet also hit an artificial hedge that was placed behind it and thus did not topple completely onto the ground. *Id.* ¶ 14. Immediately after this incident, Ballas began to complain of extreme head pain and nausea. *Id.* ¶ 16. She was treated at the scene by an emergency medical technician and was eventually transported to a hospital for treatment. *Id.* ¶ 16; ECF No. 199-6. Ballas was later diagnosed with traumatic brain injury, post-concussion syndrome, hemicrania headaches, occipital neuralgia, and trigeminal nerve pain. Ballas Decl. ¶ 17.

Ballas claims that she "would never have sat on the Seat-n-Meet had there been a warning on it that it could tip over if [she] leaned back." *Id.* ¶ 18. However, there were no signs on the Seat-n-Meet providing instruction or a warning that it could tip over if a user leaned back on the seats. *Id.* ¶¶ 6–7, 18.

The defendants played various roles in these events. Greenhouse sponsored the conference where Ballas was injured, and it entered into a License Agreement with Javits to hold this event at the Javits Center. *See* ECF No. 199-3. Greenhouse contracted with Production Glue to develop the conference layout and to provide

furniture for the event, including the Seat-n-Meet.  *See* ECF No. 199-4.  Under

contract with Greenhouse, Production Glue arranged to rent the Seat-n-Meet from

Fresh Wata for use at the Greenhouse event.  *See* ECF No. 199-5.  Fresh Wata

shipped the Seat-n-Meet to the Javits Center, where it was placed for use at the

conference.  *See* ECF No. 199-11 at 95.

## B.    Procedural History

Plaintiff commenced this action against Greenhouse and Javits on December

6, 2022, with a corrected Complaint filed on December 8, 2022.  ECF No. 8.  By

Order dated February 9, 2023, Judge Oetken dismissed this action against Javits

without prejudice.  ECF No. 21.  The parties consented to the jurisdiction of a U.S.

Magistrate Judge, and this action was reassigned to Judge Cott on March 15, 2023.

ECF No. 29.[2]

Plaintiff filed a First Amended Complaint against Greenhouse and

Production Glue, ECF No. 33, followed by a Second Amended Complaint against

Greenhouse, Production Glue, and Javits.  ECF No. 48.  In response, Production

Glue filed a Third-Party Complaint against Fresh Wata.  ECF No. 65.

On January 30, 2024, Plaintiff filed a Third Amended Complaint against

Greenhouse, Javits, Production Glue, Fresh Wata, and Xtreme Metal Works and

Xtreme Metal Works, LLC (together, "Xtreme").  ECF No. 106.  In response,

Production Glue asserted crossclaims against Fresh Wata, Greenhouse, Javits, and

---

[2] On August 30, 2024, this action was reassigned to the undersigned.

Xtreme.  ECF No. 121.  Javits and Greenhouse, in turn, asserted crossclaims against Fresh Wata, Production Glue, and Xtreme.  ECF No. 123.

On April 18, 2024, Plaintiff filed her Fourth Amended Complaint against Fresh Wata, Greenhouse, Javits, Production Glue, and Xtreme.  ECF No. 137. Javits and Greenhouse then asserted crossclaims against Fresh Wata, Production Glue, and Xtreme, and Production Glue asserted crossclaims against Fresh Wata, Greenhouse, Javits, and Xtreme.  ECF Nos. 150–51.  Fresh Wata filed crossclaims against Greenhouse, Javits, Production Glue, and Xtreme.  ECF No. 152.

On March 24, 2025, Plaintiff filed a motion for summary judgment.  ECF No. 187.  The Court denied that motion without prejudice for failure to comply with, *inter alia*, Rule II.B of this Court's Individual Rules and Practices for Civil Cases, which requires a pre-motion letter and a pre-motion conference.  On March 27, 2025, Plaintiff filed a letter expressing her intent to re-file the motion for summary judgment, addressing the parties' positions on a briefing schedule and requesting a pre-motion conference.  ECF No. 190.  The Court held a conference on April 2, 2025, during which the parties raised an issue with respect to their consent to proceed before a U.S. Magistrate Judge under 28 U.S.C. § 636(c), which the Court stated it intended to resolve before summary judgment motions proceeded.

Plaintiff voluntarily dismissed her claims against Xtreme on May 13, 2025. ECF No. 204.  The parties then filed a new consent to jurisdiction by a U.S. Magistrate Judge signed by all parties, which allowed the case to proceed.  ECF No. 205.

Before the consent issue was resolved, Plaintiff filed the instant77 motion for summary judgment on May 5, 2025.  ECF No. 199.  Greenhouse and Javits opposed Plaintiff's motion and cross-moved for summary judgment.  ECF Nos. 212–13.  Fresh Wata also opposed Plaintiff's motion and cross-moved for summary judgment.  ECF No. 214.  On the same day, Production Glue opposed Plaintiff's motion and cross-moved for summary judgment.  ECF No. 215.

Plaintiff filed a combined reply in support of her motion for summary judgment, which included a request for leave to file a fifth amended complaint, and opposition to Javits's and Greenhouse's cross motion for summary judgment.  ECF No. 216.  On June 27, 2025, Fresh Wata filed its oppositions to Javits's, Greenhouse's, and Production Glue's cross motions.  ECF Nos. 220–21.  That same day, Ballas filed her oppositions to the Production Glue and Fresh Wata cross motions.  ECF Nos. 222–23.[3]  On July 7, 2025, Fresh Wata, Production Glue, Javits, and Greenhouse filed replies in support of their cross motions.  ECF Nos. 225–27.

## II.    LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure "allows a party to seek a judgment before trial on the grounds that all facts relevant to a claim(s) or defense(s) are undisputed and that those facts entitle the party to the judgment sought." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014).  To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine

---

[3]  These oppositions are identical to Ballas's opposition to the Javits and Greenhouse cross motion for summary judgment filed at ECF No. 216.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, 724 F. Supp. 3d 340, 356 (S.D.N.Y. 2024) (quoting *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)). To establish that there is no genuine issue of material fact, a moving party may either "submit[ ] evidence that negates an essential element of the non-moving party's claim, or . . . demonstrat[e] that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Syville v. City of New York*, No. 20-CV-4633, 2022 WL 16541162, at *5 (S.D.N.Y. Oct. 28, 2022) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017)).

The court is "required to view the evidence in the light most favorable to the party opposing summary judgment [and] to draw all reasonable inferences in favor of that party[.]" *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, the non-moving party must provide "hard evidence . . . from which a reasonable inference in its favor may be drawn." *Hayes v. Dahlke*, 976 F.3d 259, 267 (2d Cir. 2020) (cleaned up). In other words, the nonmoving party "must produce admissible evidence that supports its pleadings." *Wentworth Grp. Inc. v. Evanston Ins. Co.*, No. 20-CV-6711, 2021 WL 4479576, at *3 (S.D.N.Y. Sept. 30, 2021) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968)). "Conclusory

allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400

(2d Cir. 1998), as well as the "mere existence of a scintilla of evidence in support of

the [nonmoving party's] position," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986), are insufficient to create a genuinely disputed fact.

## III.    DISCUSSION

### A.    Strict Product Liability

Ballas seeks summary judgment against all defendants on her claim for strict

product liability, which includes both design defect and failure to warn theories.

Defendants all cross-move for summary judgment on Plaintiff's strict product

liability claim.  As described below, neither Plaintiff nor Fresh Wata is entitled to

summary judgment on Plaintiff's strict product liability claim.  Plaintiff's motion

must be denied for the remaining defendants on strict product liability because this

cause of action is not asserted against them, it is too late to add this claim, and an

amendment to assert such a claim would be futile.  Accordingly, the cross motions

filed by these other defendants on strict product liability are denied as moot.

#### 1.    Fresh Wata

Plaintiff asserts claims for design defect and failure to warn against Fresh

Wata, which are discussed below.

##### a.    Design Defect

To assert a design defect claim, a plaintiff must prove that "(1) the product as

designed posed a substantial likelihood of harm; (2) it was feasible to design the

product in a safer manner; and (3) the defective design was a substantial factor in

causing plaintiff's injury."  *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d

53, 83 (S.D.N.Y. 2001) (citing *Voss v. Black & Decker Mfrg. Co.*, 59 N.Y.2d 102, 107 (1983)).  New York courts refer to these first two prongs as "the risk-utility balancing test [which is] used to determine whether a product is defective or 'unreasonably dangerous.'" *Id.* at 84 (citations omitted).

To establish liability under the risk utility test, it is not enough to demonstrate that a product is dangerous; instead, a plaintiff must engage in "'an inquiry into such factors as: (1) the product's utility to public as a whole; (2) its utility to the individual user; (3) the likelihood that the product will cause injury; (4) the availability of a safer design; (5) the possibility of designing and manufacturing the product so that it is safer but remains functional and reasonably priced; (6) the degree of awareness of the product's potential danger that can reasonably be attributed to the injured user; and (7) the manufacturer's ability to spread the cost of any safety-related design changes.'" *Clarke v. LR Sys.*, 219 F. Supp. 2d 323, 330 (E.D.N.Y. 2002) (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 257 (1995)).  "New York law requires expert testimony to establish that a proposed alternative design was both technically and economically feasible at the time of manufacture." *Wilson-Wolf v. Tesla Vehicles*, No. 22-CV-10066, 2026 WL 84499, at *5 (S.D.N.Y. Jan. 12, 2026) (citing *Ruthosky v. John Deere Co.*, 235 A.D.2d 620, 622 (3d Dep't 1997)).

"[F]or the purposes of analyzing a design defect claim, the theories of strict liability and negligence are virtually identical." *Colon*, 199 F. Supp. 2d at 83 (citation omitted).  "A commercial lessor who introduces a defective product into the

marketplace should be subject to the same potential liability that faces the manufacturer or retailer of a defective product." *Winckel v. Atlantic Rentals & Sales, Inc.*, 159 A.D.2d 124, 125 (2d Dep't 1990).

First, Plaintiff argues that the Seat-n-Meet presented a tipping hazard. ECF No. 199 at 4. Plaintiff's expert, Eric Heiberg, P.E., conducted a stability analysis of the Seat-n-Meet and concluded that it would tip when users leaned back on the seats. ECF No. 199-19 at 19–20. In opposition to Plaintiff's motion, Fresh Wata presented no evidence raising a genuine dispute of material fact as to Heiberg's stability analysis or the existence of this tipping hazard. To the contrary, Fresh Wata's structural engineering expert admitted that individuals seated next to each on one side of the table who pushed back can cause the Seat-n-Meet "to become unstable and either tip or topple over." ECF No. 199 at 12 (quoting ECF No. 199-21 at 77). Thus, there is thus no genuine dispute that the Seat-n-Meet, as designed, posed a substantial risk of tipping.[4]

Second, Plaintiff argues that Fresh Wata could have used an alternative design that was adequately stable and safe. ECF No. 199 at 5. Heiberg opined that Fresh Wata could have "extended the four feet long bottom tubes that are at each end of the Seat-N-Meet an additional 36 inches on each side" to modify the tipping point such that "the Seat-N-Meet would not tip over and impact the occupants,"

---

[4] Fresh Wata also argues that Plaintiff's actions in leaning back in the seat "was neither intended nor part of normal use." ECF No. 214 at 8. Whether Plaintiff's leaning back on the swing was a foreseeable use of the Seat-n-Meet is addressed below in discussing the "failure to warn" theory. As described in that section, there is no genuine dispute that Fresh Wata was aware that users would lean back on the swing. *See infra* Section III.A.1.b.

ECF No. 199-19 at 20, and Fresh Wata could have increased the weight of certain tubes on the structure by making them solid steel instead of hollow steel such that they would weigh enough to prevent the Seat-N-Meet from tipping." *Id.* at 21.  In expressing this opinion, however, Heiberg failed to demonstrate the feasibility and efficacy of these alternative designs through his own testing or identification of other manufacturers that utilize these designs.  *See Rypkema v. Time Mfg. Co.*, 263 F. Supp. 2d 687, 692 (S.D.N.Y. 2003) (experts can prove the feasibility and efficacy of alternative designs either by (1) showing, "through testing and construction of a prototype, that such an alternative design is within the realm of practical engineering feasibility," or (2) identifying "makers of similar equipment who have already put into use the alternative design."); *see also Those Certain Interested Underwriters v. Farley Grp.*, No. 12-CV-0707, 2015 WL 5602924, at *49 (N.D.N.Y. Sept. 23, 2015) (holding plaintiff failed to offer sufficient evidence of feasible alternative design where expert described proposed alternative designs without demonstrating their feasibility and efficacy through his own testing or identification of other manufacturers who used those designs).[5]

Finally, Plaintiff argues that her injuries were caused by the Seat-n-Meet apparatus tipping back and falling onto her.  ECF No. 199 at 9.  According to an

---

[5] Neither did Fresh Wata address the economic or technological feasibility of the proposed alternatives.  Instead, Fresh Wata's expert asserted that Heiberg's proposed modifications to the structure "would have fundamentally altered the aesthetic and functional qualities of the product."  ECF No. 214 at 9; *see also* ECF No. 214-6 at 79 ("If you really, really want to make sure this structure to not fail under any circumstances . . . then you have to make it much, much wider or you wave to provide anchorage at the bottom. You have to completely redesign the configuration and geometric properties.").

incident report prepared by Production Glue at the scene of the incident, "the swing overturned . . . [and] Ms. Ballas was struck in the head by the side of the [Seat-n-Meet], a 2" square steel frame. She also hit her head on the hedge while falling." ECF No. 199-6 at 2. In opposition to summary judgment, Fresh Wata offers testimony from its expert, Mr. Hemmatyar, that even if the structure tipped as asserted, the Seat-n-Meet itself could not have made contact with Plaintiff and therefore could not have caused her injury. ECF No. 214 at 9; ECF No. 214-6 at 114–17. Fresh Wata's quibbling over the precise mechanism of injury fails to raise a genuine dispute of material fact on this element. Regardless of whether it was the frame of the Seat-n-Meet, the hedge, or an entirely different object that directly struck Ballas, there is no genuine dispute that the rapid sequence of events that caused Plaintiff's injury was directly set in motion by the tipping of the Seat-n-Meet. Thus, there is no genuine dispute that the Seat-n-Meet's susceptibility to tipping was a substantial factor in causing her injury.

Because Plaintiff has not demonstrated the absence of a genuine dispute of material fact as to the feasibility and efficacy of an alternative design for the Seat-n-Meet, summary judgment is denied as to her design defect claim against Fresh Wata.

### b.    Failure to Warn

To establish a failure to warn claim under New York law, a plaintiff must show that "(1) the manufacturer had a duty to warn; (2) the manufacturer breached the duty to warn in a manner that rendered the product defective, *i.e.*, reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's

13

injury; and (4) the plaintiff suffered loss or damage." *Hollman v. Taser Int'l, Inc.*, 928 F. Supp. 2d 657, 672–73 (E.D.N.Y. 2013) (citing *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997)).  The failure to warn analysis is "identical under strict liability and negligence theories of recovery." *Colon*, 199 F. Supp. 2d at 84.

Plaintiff argues that Fresh Wata, as the lessor of the Seat-n-Meet, breached its duty to warn as there were no warnings on or near the Seat-n-Meet structure. ECF No. 199 at 11.  Fresh Wata does not dispute that there were no such warnings. A duty to warn can be breached by "the complete absence of warnings as to a particular hazard." *Bah v. Nordson Corp.*, No. 00-CV-9060, 2005 WL 1813023, at *13 (S.D.N.Y. Aug. 1, 2005) (citation omitted).  Thus, there is no genuine dispute of fact with respect to Fresh Wata's failure to warn, *if* it had a duty to warn.

As discussed above, there is also no genuine dispute of material fact that Plaintiff was injured in the course of the Seat-n-Meet structure tipping.  *See supra* Section III.A.1.a.  New York law carries a presumption that a user would have heeded warnings if they had been provided and that the injury would not have occurred.  *See Anderson v. Hedstrom*, 76 F. Supp. 2d 422, 441 (S.D.N.Y. 1999). Additionally, Plaintiff provided a sworn declaration that she "never would have sat on the Seat-n-Meet had there been a warning on it that it could tip over" if she leaned back.  ECF No. 199-23 at 4.  In opposition, Fresh Wata offered no evidence that a warning would have been futile to rebut the presumption.  Thus, there is no genuine dispute of material fact that the lack of warning regarding the risk that the Seat-n-Meet could tip over was a proximate cause of Plaintiff's injury.

14

The main issue, therefore, is whether Fresh Wata had a duty to warn Plaintiff in the first place. "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 237 (1998). This duty to warn also extends to commercial lessors of a product. *See Adeyinka v. Yankee Fiber Control, Inc.*, 564 F. Supp. 2d 265, 279–83 (S.D.N.Y. 2008) (denying lessor's motion for summary judgment on failure-to-warn claim). *See also Piper v. Kabar Mfg. Corp.*, 251 A.D.2d 1050 (4th Dep't 1998) (affirming denial of summary judgment dismissing failure to warn claim against casual lessor).

The evidence submitted on summary judgment establishes that it was foreseeable that a user of the Seat-n-Meet would lean back on the seats. The Fresh Wata website promoting the Seat-n-Meet for commercial rental advises, "[a]lways use caution with *leaning back on the swings* without holding on to the swing chains as you or your guest may lose your balance." ECF No. 199 at 11–12 (emphasis added). This warning demonstrates that Fresh Wata recognized that users would lean back on the swings of the Seat-n-Meet. Indeed, the most natural way of entering the Seat-n-Meet would be for a user to first push back on the swing seat and then swing forward into place at the fixed table.[6] Additionally, Plaintiff argues that it was foreseeable for a user to push the swing seat rearwards because there was no rearward restriction on the seats. ECF No. 199 at 11–12.

---

[6] In theory, an ultra-cautious user could (1) push the swing back without sitting on it, (2) move the seat forward to its resting position, and (3) only then sit down on the seat. It would be highly unreasonable for Fresh Wata to assume that every user would enter the Seat-n-Meet this way, without pushing one's weight back on the swing.

Fresh Wata attempts to create a disputed issue of fact by contending that Plaintiff engaged in an unforeseeable use of the product by "forceful swinging" of the seats. *See* ECF No. 214 at 17–18. Similarly, Fresh Wata argues that it is entitled to summary judgment in its favor on the grounds that "Plaintiff's own unforeseeable and reckless misuse of the Seat-n-Meet was the sole proximate cause of her injuries." ECF No. 214 at 15. But Fresh Wata identifies no evidence that Plaintiff was forcefully swinging on the seat. There were only a handful of witnesses to this incident and none of them testified that Ballas was forcefully or recklessly swinging on the Seat-n-Meet. Ms. Papa denied that she and Ms. Ballas were swinging. ECF No. 214-11 at 57 ("We are not swinging, it was not an abrupt movement."). While Ms. Hooker, a Greenhouse employee, testified that she thought Ms. Ballas was swinging on the Seat-n-Meet, she described this activity as "allowed," "foreseeable" and not "improper." ECF No. 214-12 at 23, 32–33. No reasonable jury could conclude from this evidence that Ballas used the Seat-n-Meet in a reckless and unforeseeable fashion. Fresh Wata also cites Ms. Costello's testimony that she thought Ballas and Papa had pulled the Seat-n-Meet over, however this opinion was based on her review of the photograph. She did not actually witness the incident. ECF No. 214-7 at 38. Further, Ms. Costello acknowledged that she did not know "what they did with their feet afterwards" because "[o]bviously you're not going to swing under a table" and, in the position reflected in the photograph, she would not expect the Seat-n-Meet to topple over. *Id.* at 39–40. Fresh Wata also cites Mr. Hemmatyar's testimony that Ballas "is not

16

leaning" but "is pushing back" so that the seat was "about two feet away from its original position" and thus the use was "outside of the intended purpose for this Seat-N-Meet structure." ECF No. 214-6 at 89–90. However, to construe this testimony as evidence of an unforeseeable use of the product would require drawing a genuine distinction between "leaning back," which Fresh Wata indisputably contemplated, and "pushing bank" on the seat. Such a distinction is untenable, and Fresh Wata fails to create a genuine issue of material fact.

Next, Fresh Wata contends there is no evidence that it had knowledge of a tipping hazard if a user leaned back on the seats. ECF No. 214-3 at 3; ECF No. 214-7 at 38, 78; ECF No. 214-9 at 84. While Fresh Wata is correct about the evidence concerning its *actual* knowledge, Fresh Wata's opposition to Plaintiff's summary judgment motion fails to address its *constructive* knowledge of the tipping hazard, *i.e.*, what Fresh Wata should have known. But neither does Ballas show the absence of a genuine dispute of material fact as to what Fresh Wata should have known. In support of her motion, Plaintiff offered Heiberg's opinion that stability testing would have detected the instability of the product. ECF No. 199-19 at 17–20. It is undisputed that Fresh Wata conducted no formal stability testing, *see* ECF No. 214 at 9, and Fresh Wata's expert had no critique of Heiberg's testing methodology. ECF No. 199-21 at 87. While Ballas appears to have the better of this argument, she has not demonstrated the absence of any genuine issue of material fact as to what Fresh Wata should have known about the stability of the Seat-n-Meet. Fresh Wata is a lessor, not a manufacturer. While Ballas argues that

17

Fresh Wata should have conducted certain tests and thereby would have acquired knowledge of the tipping hazard, she has not met her burden to eliminate any genuine dispute on this issue. As the Second Circuit has explained, New York product liability cases "squarely hold that it is up to the jury to decide whether the manufacturer, in fact, has a duty to warn." *Liriano v. Hobart Corp.*, 132 F.3d 124, 131 (2d Cir. 1998). Indeed, in a case involving a casual lessor, the Fourth Department found that the duty to warn is limited to "known defects." *Piper v. Kabar Mfg. Corp.*, 251 A.D.2d at 1051. Fresh Wata is likely more than a "casual" lessor, but the point is that Plaintiff has not demonstrated the absence of any genuine issue of material fact as to what testing Fresh Wata *should have* conducted under the circumstances.

Alternatively, Fresh Wata argues that the risk of the Seat-n-Meet tipping was so "open and obvious" that it had no duty to warn about it. ECF No. 214 at 13 (citing *Colon*, 199 F. Supp. 2d 53). In other words, Fresh Wata argues that Ballas should be deemed to know that the Seat-n-Meet was susceptible to tipping when two persons sat on the same side and leaned back, but that Fresh Wata should not be charged with this same knowledge. This argument is entirely undermined by the evidence Fresh Wata itself has presented that it had rented out the Seat-n-Meet multiple times without incident. *See* ECF No. 214-3 at 3 (arguing that Fresh Wata was not aware of any other incidents involving the Seat-n-Meet, despite its use at several other events and by Fresh Wata's own employees, such that Plaintiff's actions were not foreseeable). Plainly, Fresh Wata had far more experience with

18

the Seat-n-Meet than did Ballas, yet Fresh Wata claims ignorance of its tipping hazard.  Fresh Wata raises no genuine issue of material fact as to whether the danger that it failed to see was so open and obvious that it eliminated any duty to warn.

Finally, Fresh Wata argues that it should not be held liable for alterations or modifications made by third parties "post-distribution."  ECF No. 214 at 14 (citing *Scardefield v. Telsmith Inc.*, 267 A.D.2d 560 (3d Dep't 1999)).  While Fresh Wata states that Production Glue had to assemble the chains on the Seat-n-Meet and make changes due to missing hardware, ECF No 214-3 at 2, it identifies no evidence that these actions contributed to Plaintiff's injury.  To the contrary, the evidence submitted on summary judgment demonstrates that Plaintiff's injury resulted from the entire structure tipping over.  This argument fails to raise a genuine dispute of material fact.

Because Ballas fails to demonstrate the absence of a genuine dispute of material fact as to Fresh Wata's duty to warn, an issue that is not generally capable of being decided on summary judgment, Plaintiff's summary judgment motion is denied on this claim.  But a reasonable jury could easily find in Plaintiff's favor on this claim, which means that Fresh Wata's cross-motion must be denied.

### 2.    Production Glue, Greenhouse, and Javits

Plaintiff moves for summary judgment as to her strict product liability claims against Production Glue, Greenhouse, and Javits.  However, the operative Fourth Amended Complaint, ECF No. 137, does not include these defendants in the claim for strict product liability.  On reply, Plaintiff does not deny that these other

19

defendants were omitted from the strict product liability claim, but requests permission to amend the complaint to add them. *See* ECF No. 222 at 9–12. For the reasons described below, leave to amend is denied, which requires denial of Plaintiff's motion on the product liability claim against Production Glue, Greenhouse and Javits. Because there are no strict product liability claims asserted against Production Glue, Greenhouse and Javits, their cross motions on such claims are denied as moot.

Fact discovery closed on March 15, 2024. ECF No. 118. Plaintiff amended her complaint with leave of court four times between the commencement of this action and April 18, 2024. *See* ECF Nos. 33, 48, 106, 137. The April 10, 2024 Order granting leave to file the fourth amended complaint explicitly stated that "[t]here will be no further amendments granted." ECF No. 129. At no point until her reply on summary judgment did Plaintiff seek to amend her complaint to assert strict product liability claims against Production Glue, Greenhouse, and Javits. ECF No. 216 at 9–12.

"It is well established that a party cannot assert a claim for the first time in its motion papers." *Dominick & Dominick LLC v. Deutsche Oel & Gas AG*, No. 14-CV-06445, 2017 WL 3669619, at *5 (S.D.N.Y. Aug. 24, 2017), *aff'd* 756 F. App'x 58 (2d Cir. 2018) (quoting *Mignault v. Ledyard Pub. Sch.*, 792 F. Supp. 2d 289, 301 (D. Conn. 2011)); *Hickey v. State Univ. of New York at Stony Brook Hosp.*, No. 10-CV-1282, 2012 WL 3064170, at *5 (E.D.N.Y. July 27, 2012) (declining to address claims raised for the first time in motion for summary judgment). "At the summary

judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Dominick & Dominick LLC*, 2017 WL 3669619, at \*5 (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires" Fed. R. Civ. P. 15(a)(2). Relevant factors to be considered under Rule 15(a) include, in particular, whether allowing the amendment at this stage in the litigation will prejudice the non-movant. *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014).

Where, as here, the request for leave to amend a pleading comes after the deadline set by the court, *see* ECF No. 62 (setting July 28, 2023 deadline to join additional parties, amend pleadings, or move for leave to do so), the party seeking to amend its pleadings must also meet the requirements of Rule 16(b). "A schedule may be modified only with good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[A] finding of 'good cause' depends on the diligence of the moving party" and the burden to show such diligence rests on the moving party. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline. *Fresh Del Monte Produce, Inc.*, 304 F.R.D. at 174–75 (quoting *Christians*

21

*of Cal., Inc. v. Clive Christian N.Y., LLP*, 2014 WL 3605526, at \*4 (S.D.N.Y. July 18, 2014)).

Plaintiff's request to amend the complaint comes too late.  The Court already stated that no further amendments would be permitted.  Even considering Plaintiff's request under Federal Rules of Civil Procedure 15(a) and 16(b), Plaintiff has not shown good cause for this untimely amendment.  Plaintiff's request comes after undue delay and would result in undue prejudice to Production Glue, Greenhouse, and Javits.

Plaintiff argues that her proposed amendment relies upon "the same exact facts that are already in the record." ECF No. 216 at 11.  This statement acknowledges that Plaintiff already knew the facts forming the basis of the proposed amendment and shows undue delay.  Plaintiff notes that "it was not until the facts became known that the Products Liability claim became apparent." *Id.* Considering that fact discovery ended in March 2024, the facts were known for almost one month before Plaintiff's fourth amended complaint was filed, and for approximately fourteen months before her summary judgment motion was filed. These facts do not mitigate Plaintiff's undue delay.

Further, Plaintiff argues that there is no prejudice because Production Glue, Greenhouse, and Javits "have been in this case since inception and even hired product experts to inspect the Seat-N-Meet." *Id.*  But being a party is not the same as being on notice that one is charged with strict product liability.  Had these defendants known that such claims would be asserted against them, they might

22

have taken different positions or sought additional discovery.  Indeed, Plaintiff's moving brief illustrates this prejudice by citing testimony by Production Glue's expert acknowledging a design defect.  ECF No. 199 at 13–14.  Production Glue's expert might have reached different conclusions had Production Glue been on notice that it, too, was sued for strict product liability.  Adding such a claim now, after all discovery has concluded and summary judgment motions filed, is highly prejudicial.

Plaintiff also argues that the purpose of this proposed amendment is "to correct an oversight in the pleadings."  ECF No. 216 at 11.  But Plaintiff already had four opportunities to correct any oversight and failed to do so.  Further, Plaintiff twice filed her summary judgment motion without following the Court's procedures, thus skipping the exchange of pre-motion letters and a pre-motion conference where the parties could have discussed which claims are asserted against each defendant.  Instead, Plaintiff filed her summary judgment motion and first requested leave to amend the complaint in a subsection of her reply brief.  This left no direct opportunity for Defendants to respond to her request for leave to amend, which is plainly prejudicial.

Even if Plaintiff could overcome all these hurdles to amendment, adding strict liability claims against these other defendants would be futile because they are not manufacturers, retailers, or distributors to which strict liability applies. Under New York law, strict liability applies to "manufacturer[s], retailer[s], or distributor[s] of a defective product . . . that are 'within the distribution chain.'" *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 397 (S.D.N.Y. 2018) (quoting

23

*Finerty v. Abex Corp.*, 27 N.Y.3d 236, 241–42 (2016)).  While there is not a precise

definition of what places an entity within a product's chain of distribution, "the

failure to take title to a product places that entity on the outside."  *Id.* at 398.

Plaintiff presents no evidence that Production Glue, Greenhouse, or Javits took title

to the Seat-n-Meet or are properly viewed as being within the distribution chain.

Far from being aligned with Fresh Wata (a commercial lessor) in the distribution

chain, Production Glue, Greenhouse and Javits are more akin to lessees,

purchasers, or end users of the product.[7]  In an analogous case, the Second

Department refused to impose strict product liability on the promoter of an antiques

show who rented a defective chair from a commercial lessor.  *See Winckel*, 159

A.D.2d 124.  As that court explained, the policy considerations that justify the

imposition of strict product liability "lack applicability in the case of a party who is

not engaged in the sale of the product in issue as a regular part of its business."  *Id.*

at 130 (quotations and citation omitted).  There was no evidence presented on

summary judgment that Production Glue, Greenhouse or Javits had ever rented the

Seat-n-Meet before.  *See* ECF No. 199-15 at 10 (testifying that Ms. Berry of

Production Glue had not rented a Seat-n-Meet structure before).

---

[7] On reply, Ballas argues that strict product liability "extends to *lessees* and distributors in the chain of distribution," ECF No. 222 at 22 (emphasis added), citing *Fernandez v. Riverdale Terrace*, 63 A.D.3d 555 (1st Dep't 2009).  *Fernandez* addresses the liability of a distributor, but not that of a lessee.  The same is true of other cases that Ballas cites, including *Michael v. Gen. Tire, Inc.*, 297 A.D.2d 629 (2d Dep't 2002) and *Harrigan v. Super Prods. Corp.*, 237 A.D.2d 882 (4th Dep't 1997).  Another case that Ballas cites for this proposition granted summary judgment in favor of a defendant that "had no role in the manufacture, sale, or distribution" of the product at issue.  *Joseph v. Yenklin Majestic Paint Corp.*, 261 A.D.2d 512 (2d Dep't 1999).  Thus, Ballas fails to show that strict liability applies to product lessees.

Plaintiff also refers to Rule 15(b)(2), which permits amendments to conform to the evidence, but never explains how this rule applies, and Ballas acknowledges that such an amendment is inappropriate where it would cause prejudice. *See* ECF No. 222 at 10. As described above, allowing amendment at this stage, where other defendants have already embraced the theory that Fresh Wata is responsible for a defective design, would cause prejudice.

Plaintiff's request for leave to file a fifth amended complaint is denied. Accordingly, Plaintiff's request for summary judgment on strict product liability against Production Glue, Greenhouse, and Javits is denied, and the cross motions filed by Production Glue, Greenhouse, and Javits as to Plaintiff's claims grounded in strict product liability are denied as moot.

### B.   Breach of Implied Warranty

#### 1.   Fresh Wata

Plaintiff moves for summary judgment on her breach of implied warranty claim against Fresh Wata. Fresh Wata does not specifically oppose Plaintiff's motion on this claim and Plaintiff does not address this claim in her reply.

To sustain a claim for breach of implied warranty, a plaintiff must prove: (1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident. *Richman v. Respironics, Inc.*, No. 08-CV-9407, 2012 WL 13102265, at *20 (S.D.N.Y. Mar. 13, 2012) (citing *In re Am. Exp. Lines, Inc.*, 620 F. Supp. 490, 518 (S.D.N.Y. 1985)). "The proof required for an implied warranty claim is therefore closely aligned with—indeed, often coextensive

with—the proof required for strict products liability." *Wilson-Wolf*, 2026 WL 84499, at \*6 (citing *Pinello v. Andreas Stihl AG & Co. KG*, No. 08-CV-452, 2011 WL 1302223, at \*17 (N.D.N.Y. Mar. 31, 2011) ("Liability under strict products liability and implied warranty theory are essentially the same.")).

As discussed above, there is a genuine dispute of material fact as to whether the Seat-n-Meet is a defective product because neither Plaintiff nor Fresh Wata addressed the economic or technological feasibility of alternative, safer designs. *See supra* Section III.A.1.a. Accordingly, summary judgment is denied as to the breach of implied warranty claim as it concerns Fresh Wata.

### 1.    Production Glue, Greenhouse, and Javits

Plaintiff moves for summary judgment as to breach of warranty claims against Production Glue, Greenhouse, and Javits. However, the operative Fourth Amended Complaint, ECF No. 137, does not plead a cause of action for breach of warranty against these defendants. As discussed above, amending the complaint at this point in the case would be highly prejudicial. Further, while Plaintiff requested leave to amend the complaint to add strict products liability claims, her request made no mention of adding a breach of warranty claim. Accordingly, Plaintiff's motion for summary judgment on this claim is denied as to Production Glue, Greenhouse, and Javits, and the cross motions filed by these same defendants as to claims for breach of warranty are denied as moot.

### C.    Negligence Claim Against Javits

Plaintiff and Javits both seek summary judgment on Plaintiff's claim for negligence. Plaintiff argues that Javits is liable because it breached its duty to keep

its premises safe for visitors.  ECF No. 199 at 19–21.  Javits contends that, as a

premises owner, it cannot be liable because it neither created the dangerous

condition that injured Plaintiff, nor did it have actual or constructive notice of that

condition.  For the reasons described below, Plaintiff's motion is denied and Javits's

motion is granted.

Javits acknowledges that the "owner and possessor of a premises has a duty

to use reasonable care to keep the premises in a reasonably safe condition for the

protection of all persons whose presence is reasonably foreseeable."  ECF No. 212 at

8.  However, Javits argues that Ballas has presented no evidence to create a

genuine dispute of fact as to whether it had notice of a dangerous condition.

Costello, the President of Fresh Wata, testified that she had no awareness of

a tipping hazard or prior incidents in which the Seat-n-Meet tipped over.  ECF No.

199-10 at 39, 79.  She also testified that she was not aware of any warnings or

specifications for use of the Seat-n-Meets beyond what is on the website, nor

whether any warnings or user manuals were sent out to customers who rented the

structures.  *Id.* at 51–57, 65.  In support of its cross-motion, Javits argues that there

is no evidence that it had notice of a tipping hazard.  *See* ECF No. 213 at 10–16.  In

response, Plaintiff fails to identify any evidence to the contrary, arguing instead

that Javits is liable "even if it did not have any notice of or create the dangerous

condition."  *See* ECF No. 222 at 24–25.  Accordingly, Plaintiff fails to identify any

evidence that Javits was aware of a tipping hazard.

27

Further, the Seat-n-Meets are shipped to customers largely assembled.[8] While Plaintiff argues that Javits was "exclusively responsible for the transport and placement of the Seat-n-Meet within the facility," ECF No. 199 at 21, she does not contend that Javits itself created the dangerous condition.  Rather, Plaintiff argues that Javits failed to inspect or test the Seat-n-Meet to ensure its safety.  But Plaintiff cites no authority that Javits had a duty to test or inspect a structure provided by a third party with only minor onsite assembly.

Plaintiff argues that Javits is liable for the negligent acts of third parties.  In support of this argument, she cites *Podlaski v. Long Island Paneling Ctr. of Centereach, Inc.*, 58 A.D.3d 825 (2d Dep't 2009), for the proposition that "Javits bears liability even if it did not have notice of the dangerous condition since the condition was created by its independent contractor or their agents."  ECF No. 199 at 20.  But in *Podlaski*, the entity that created the dangerous condition was the premises owner's agent.  *Podlaski*, 58 A.D.3d at 826.  Plaintiff makes no showing that Fresh Wata, Production Glue, or Greenhouse were operating as Javits's agents.  If anything, Plaintiff's assertion that "Javits was exclusively responsible for the transport and placement of the Seat-n-Meet within the facility, on behalf of Production Glue and Greenhouse," ECF No. 199 at 21, suggests the opposite, *i.e.*,

---

[8] There is arguably inconsistent testimony as to whether the Seat-n-Meets were delivered to the event fully assembled or requiring connection of the seats to the structure's frame.  *Compare* ECF No. 199-11 at 96 (testifying that the Seat-n-Meets are shipped to the events fully assembled), *with* ECF No. 199-10 at 76 (testifying that the seats may need to be attached to the frame upon delivery); ECF No. 199-16 (testifying that the Seat-n-Meets arrived with the swings unattached from the frame).  This difference is inconsequential because there is no evidence that connecting the swing seats to the frame contributed in any way to the injury alleged here.

that Javits was acting as Production Glue's and/or Greenhouse's agent with respect to the Seat-n-Meet.  And there is no showing that Fresh Wata, which owned the Seat-n-Meet, was an agent of Javits.  Accordingly, Javits cannot be liable under this theory.

In support of its cross-motion for summary judgment, Javits cites several decisions granting summary judgment to premises owners in cases brought by plaintiffs injured by collapsing seats.  *See* ECF No. 213 at 15 (*citing Quinones v. Federated Dep't Stores, Inc.*, 92 A.D.3d 931 (2d Dep't 2012) (granting summary judgment on negligence claim where defendant submitted evidence establishing it neither created nor had actual or constructive notice of the defective condition of the chair); *Loiacono v. Stuyvesant Bagels, Inc.*, 29 A.D.3d 537 (2d Dep't 2006) (same, noting that "a general awareness that a dangerous condition might exist" is insufficient to create liability "in the absence of notice of the particular condition which caused the injured plaintiff's fall").  These authorities support granting summary judgment in favor of Javits.

On reply, Plaintiff cites cases standing for the proposition that a property owner has a non-delegable duty to provide the public a reasonably safe premises.  *See* ECF No. 222 at 24–25.  These cases are inapposite and have no application to the facts here, where plaintiff was injured, not by some fixture of the premises, but by a separate, portable product procured and supplied by third parties.  *See Logiudice v. Silverstein Props., Inc.*, 48 A.D.3d 286, 287 (1st Dep't 2008) (describing duty to provide "reasonably safe means of ingress and egress"); *Correa v. City of*

*New York*, 66 A.D.3d 573 (1st Dep't 2009) (alleging injury due to inadequate screening provided by stadium proprietor); *Rudinsky v. N.Y. Convention Ctr. Dev. Corp.*, No. 105535/2006, 2010 WL 2486144 (Sup. Ct. N.Y. Cnty. June 10, 2010) (claiming injury due to plaintiff tripping on raised platform concealed by carpet on premises floor).  Contrary to Plaintiff's argument, these authorities do not support the existence of "a nondelegable duty to provide the plaintiff with a safe piece of furniture."  ECF No. 222 at 25.  Only Fresh Wata was legally responsible for the safety of the furniture it supplied.  Plaintiff's attempt to convert a product liability case into a premises liability case is unavailing, and Javits is entitled to summary judgment on Plaintiff's negligence claim.

> **D.    Negligence Claim Against Production Glue and Greenhouse**

Plaintiff, Production Glue, and Greenhouse each seek summary judgment on Plaintiff's claim for negligence.  For the reasons described below, Plaintiff's motion is denied and the motions of Production Glue and Greenhouse are granted.

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party."  *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 138 (2002).  "[T]he existence and scope of a duty is a question of law requiring courts to balance sometimes competing public policy considerations."  *Id.*

Plaintiff cites no legal authority establishing that Production Glue and Greenhouse, as event coordinator and sponsor, owed her any duty of care in the selection and testing of rental furniture.  *See* ECF No. 199 at 21–23.  The main case Plaintiff cites with reference to Production Glue and Greenhouse concerns an

exception to the general rule that a contractual obligation does not give rise to tort liability in favor of a noncontracting third party. *See* ECF No. 199 at 22–23 (*quoting McEleney v. Riverview Assets, LLC*, 201 A.D.3d 1159 (3d Dep't 2022)). By arguing that "Greenhouse entered into a contract with Production Glue to secure the subject Seat-n-Meets," ECF No. 199 at 21, Plaintiff appears to contend that this is a case where contracting parties—Greenhouse and Production Glue—are liable in tort to third parties.

In *Espinal*, the Court of Appeals identified three situations in which a contracting party may be potentially liable in tort to third parties: (1) where the contracting party launches a force or instrument of harm, (2) where the plaintiff detrimentally relied on the continued performance of the contracting party's duties, and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely. 98 N.Y.2d at 140. Plaintiff fails to explain how any of these exceptions apply here.

Plaintiff's citation to *McEleney* suggests that she seeks to fit within the first exception described above. In other words, Plaintiff appears to contend that, by contracting to secure the Seat-n-Meets, Production Glue and Greenhouse launched a force or instrument of harm. But this exception typically applies where the defendant "created or exacerbated a dangerous condition." *Id.* at 142. The dangerous condition claimed here is the propensity of the Seat-n-Meet to tip over. There is no evidence that Production Glue or Greenhouse created or exacerbated this condition. *McEleney* is distinguishable because the defendant in that case

directly created the dangerous condition—a puddle—when its malfunctioning cleaning machine leaked water onto the floor.

Plaintiff also offers expert opinion that "[e]vent producers have a duty to provide a space free from hazards." ECF No. 199-19 at 28. Expert opinion, by itself, is insufficient to create a legal duty. Even if it were sufficient, Heiberg, who is Plaintiff's engineering expert, is not competent to opine on the duty of care owed by event coordinators and sponsors because he has no relevant education or experience in these fields. *Id.* at 33–40. Additionally, Plaintiff argues that Production Glue's *furniture design* expert, Bazemore, agreed with Heiberg's conclusions regarding the responsibility of *event producers*. ECF No. 199 at 22. But Bazemore is not competent to opine on this question either, so his apparent agreement with Heiberg's opinion is of no consequence. As *Espinal* explains, the existence of a duty of care is a legal question reserved for the Court to determine. *Espinal*, 98 N.Y.2d at 138.

Production Glue argues that it was not negligent because it complied with industry standards, which were to rely on the lessor to provide safe furniture. In support of this argument, Production Glue offers the opinion of its expert on event coordination. ECF No. 215-2 ¶ 7; *Id.* at 17. However, Production Glue acknowledges that while compliance with industry practices can constitute evidence of due care, it is not dispositive. *Miner v. Long Island Lighting Co.*, 40 N.Y.2d 372,

32

380–81 (1976).  Production Glue apparently skips over the threshold question of whether a duty is owed in the first place.[9]

Greenhouse's opposition focuses primarily on Plaintiff's theory of premises liability.  See ECF No. 212 at 7–13; ECF No. 213 at 14–16.  But the relevant question is whether an event sponsor owes a duty of care to third parties in connection with renting conference furniture.  On this issue, Greenhouse argues that the *Espinal* exceptions do not apply because Plaintiff fails to specify what contractual duty was breached, and because Greenhouse had no involvement in the design, construction or operation of the Seat-n-Meet.  ECF No. 212 at 14–15.

In the end, the Court must determine as a matter of law whether Production Glue and Greenhouse owed Plaintiff a duty of care in these circumstances.  They did not for several reasons.  First, Plaintiff, who bears the burden of proving negligence, has not cited any case from any jurisdiction imposing such a duty in these circumstances.[10]  Second, because Plaintiff appears to ground her theory of negligence in these defendants' contracts, the Court looks to *Espinal* for guidance.  The only arguably relevant exception under *Espinal*—where the contracting party launches a force or instrument of harm—does not apply here.  As *Espinal* explains, this exception typically applies when the defendant created or exacerbated the

---

[9] This omission from Fresh Wata's briefing does not entitle Plaintiff to summary judgment by default because the movant must demonstrate entitlement to judgment as a matter of law.

[10] Plaintiff cites *Landon v. Kroll Lab. Specialists, Inc.*, 22 N.Y.3d 1 (2013), in support of her argument for a duty of care.  Notably, that case imposed a duty after finding that doing so "is in keeping with that of several other jurisdictions to recognize a duty in similar circumstances." *Id.* at 7.  Plaintiff makes no such showing here.

harmful condition. To claim that Production Glue and Greenhouse did so merely by renting the Seat-n-Meet and failing to inspect it stretches this exception beyond recognition.

Additionally, it is important to consider the policy implications of imposing a duty of care. *See Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 586 (1994) (in determining the boundaries of a legal duty, courts balance "the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion of limitation of new channels of liability."). Here, Plaintiff claims that a piece of furniture posed a tipping hazard. The designer or lessor of the furniture, which presumably derives revenue from multiple uses of it over time, is in a far better position to guard against such risks than is a lessee or customer, which uses the furniture only for a limited time. Indeed, it would be onerous to require a conference sponsor or event planner to inspect and/or test each piece of rental furniture, even if just to check for some third-party certification, before making it available to conference attendees. Such parties are unlikely to have any expertise in furniture safety standards, or even which standards should apply, which means that imposing a duty of care would effectively require conference sponsors and event planners to retain furniture safety experts for each event, adding to the burden and cost of conferences.

Given that a commercial furniture lessor is subject to strict product liability, there is no good reason to impose a duty of care upon an entirely different class of

34

potential defendants.  While it is reasonable to impose a duty of care on those who *provide* furniture in the marketplace, it is not reasonable to impose such a duty on their *customers*, even when they expect third parties to use the furniture. Commercial renters of furniture almost always contemplate that it will be used by third parties (including actual and potential employees, customers, vendors and advisors) and the facts of this case do not justify expanding liability to such a vast universe of potential plaintiffs.

Plaintiff also argues that these Defendants are liable for negligence under the theory of *res ipsa loquitor*.  At the outset, this doctrine cannot provide a basis for Plaintiff to obtain summary judgment.  As the Court of Appeals has explained, *res ipsa loquitur* "does not create a presumption in favor of the plaintiff but merely permits the inference of negligence to be drawn from the circumstances of the occurrence."  *Dermatossian v. New York City Transit Auth.*, 67 N.Y.2d 219, 226 (1986).  Thus, the proper question is whether this doctrine allows Plaintiff to avoid summary judgment in favor of Production Glue and Greenhouse.  It does not.

To pursue a theory of *res ipsa loquitor*, a plaintiff must show that (1) the injurious event "was of a kind which ordinarily does not occur in the absence of someone's negligence," (2) "it was caused by an agency or instrumentality within the exclusive control of the defendant," and (3) "it was not due to any voluntary action or contribution on the part of the plaintiff."  *Potthast v. Metro–North R.R. Co.*, 400 F.3d 143, 149 (2d Cir. 2005).  While this second element—exclusive control—is not applied literally, its purpose "is simply to eliminate within reason all

explanations for the injury other than the defendant's negligence." *Dermatossian*, 67 N.Y.2d at 227 (reversing jury verdict for failure to establish exclusive control). Plaintiff herself has offered extensive evidence attributing the injury to *Fresh Wata's* negligence.  In contrast, there is no evidence that Production Glue or Greenhouse had any role in the design of the Seat-n-Meet or did anything to exacerbate its susceptibility to tipping.  Accordingly, Production Glue and Greenhouse lacked exclusive control over the Seat-n-Meet for purposes of the doctrine of *res ipsa loquitur.  See Alonso v. Reed Elsevier, PLC*, 131 N.Y.S.3d 339, 341 (1st Dep't 2020) (holding doctrine of *res ipsa loquitor* inapplicable where no one had exclusive control over a display and there were issues of fact as to why it fell).

Accordingly, Plaintiff's motion for summary judgment is denied and the cross-motions of Production Glue and Greenhouse are granted on the negligence claim.

### E.    Indemnification

Greenhouse and Javits move for summary judgment on their claims for common law indemnification against Fresh Wata and contractual indemnification against Production Glue.  As discussed above, summary judgment is granted in their favor as to all claims asserted against them, so this request for common law indemnification is denied as moot.

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances.'" *Drzewinski v. Atl. Scaffold & Ladder Co.*, 70 N.Y.2d 774, 777 (1987) (quoting *Margolin v. New York*

36

*Life Ins. Co.*, 32 N.Y.2d 149, 153 (1973)).  The contract between Greenhouse and

Production Glue includes the following indemnification agreement, in relevant part:

> Each party shall defend and indemnify the
> other . . . against all claims, losses, suits, judgments,
> damages and liabilities, including, but not limited to
> reasonable attorney's fees and filing fees, incurred . . . in
> connection with the negligence or willful misconduct, or
> breach of this Agreement, by the indemnifying party[.]

ECF No. 199-4 at 2.  Greenhouse argues that this indemnification obligation is

triggered when a bodily injury claim arises in connection with the negligence or

willful misconduct of the indemnifying party.  So, Greenhouse argues, to the extent

Production Glue is found liable due to its negligence or willful misconduct,

Greenhouse is entitled to summary judgment on indemnification.  Production Glue,

in opposition, also states that for the indemnification clause to be triggered, there

must be a negligence finding.  As discussed above, both Production Glue and

Greenhouse are entitled to summary judgment on Plaintiff's negligence claim, so

Greenhouse's motion for summary judgment on its contractual indemnification

claim against Production Glue is denied as moot.

## IV.    CONCLUSION

For the reasons described above, the summary judgment motions filed by

Ballas and Fresh Wata are each **DENIED** and the summary judgment motions filed

by Production Glue, Greenhouse and Javits are each **GRANTED** as to the

negligence claims, and **DENIED** as moot as to the claims for strict product liability

and indemnification.

37

The Clerk of Court is respectfully directed to terminate Ballas's motion for summary judgment at ECF No. 199 as **DENIED**, and to terminate the motion at ECF No. 213 as **GRANTED IN PART** and **DENIED IN PART**.

Ballas and Fresh Wata are directed to meet and confer regarding a schedule for all pretrial filings, including *in limine* motions, and to file a letter proposing such a schedule by **March 16, 2026**.

**SO ORDERED.**

Dated: March 4, 2026
        New York, New York

Henry J. Ricardo
United States Magistrate Judge

38